UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| BRIAN KORN, individually; on behalf of all others similarly situated, | |
| | NO. CIV. S-07-02745 FCD JFM |
| Plaintiffs, | |
| v. | MEMORANDUM AND ORDER |
| POLO RALPH LAUREN CORPORATION, a Delaware Corporation; and DOES 1 through 50 inclusive, | |
| Defendants. | |

----oo0oo----

This matter is before the court on plaintiff Brian Korn's ("plaintiff" or "Korn") motion to remand the instant action to the Superior Court of California for the County of Solano on the grounds that defendant has not established that (1) it is not a citizen of California; (2) the putative class members' claims exceed the requisite jurisdictional amount in controversy of $5,000,000 pursuant to the Class Action Fairness Act of 2005 (the "CAFA"), 28 U.S.C. § 1332(d); and (3) the exceptions to CAFA do not apply.  Defendant Polo Ralph Lauren Corporation ("defendant"

1

or "Polo") opposes the motion, arguing that it has proffered sufficient evidence to demonstrate that it is a non-citizen of California and that, more likely than not, the amount in controversy exceeds the jurisdictional minimum. For the reasons set forth below,[1] plaintiff's motion is DENIED.

## BACKGROUND

On November 2, 2007, plaintiff filed a class action complaint in the Solano County Superior Court in the State of California (hereinafter "the complaint"), alleging two causes of action for violations of California Civil Code § 1747.08, arising out of defendant's (1) requests for and recording of telephone numbers and addresses when a customer pays for goods with a credit card; and (2) utilization of a credit card form which contains preprinted spaces for the telephone number and address of the cardholder. (Compl. ¶ 1). Plaintiff's complaint identifies two putative classes, the "Purchase Class" and the "Refund Class." (Id. ¶¶ 28, 36). The putative Purchase Class consists of "all persons in California from whom [d]efendant requested and recorded personal identification information as part of a credit card transaction." (Id. ¶ 28). The putative Refund Class consists of "all persons in California who entered into credit refund transactions with [d]efendant, wherein a credit card transaction form was utilized which contained a pre-printed space specifically designated for filling in the telephone number and/or address of the cardholder." (Id. ¶ 36).

---

[1] Because oral argument will not be of material assistance, the court orders this matter submitted on the briefs. See E.D. Cal. L.R. 78-230(h).

1    On December 19, 2007, defendant removed the action to this
2 court on the basis of the CAFA.  The CAFA grants district courts
3 original jurisdiction over civil class actions filed under
4 federal or state law in which any member of a class of plaintiffs
5 is a citizen of a state different from any defendant and the
6 amount in controversy for the putative class members in the
7 aggregate exceeds the sum or value of $5,000,000, exclusive of
8 interest and costs.  28 U.S.C. § 1332(d)(2).  The Act authorizes
9 removal of such actions pursuant to 28 U.S.C. § 1446.

10   Plaintiff challenges the propriety of the removal on grounds
11 that the minimal diversity of citizenship requirement is not met
12 and that defendant has not demonstrated the requisite amount in
13 controversy.  Plaintiff's complaint alleges that Defendant is a
14 Delaware corporation with its principal place of business in New
15 Jersey.  (Id. ¶ 11).  Plaintiff's complaint does not allege a
16 specific amount of damages.  However, the complaint does provide
17 that the statutory civil penalties for the alleged violations are
18 up to $1000 per violation.  In removing the action, defendant
19 supported its Notice of Removal with declarations setting forth
20 the underlying facts needed to calculate the amount in
21 controversy based on the allegations in the complaint.
22 Specifically, defendant submitted the declaration of Lee Jurgens
23 ("Jurgens"), Director of Sales Audit for defendant, which
24 provides that defendant processed more than 5,000 credit card
25 transactions over the last year in the state of California.
26 (Decl. of Lee Jurgens ("Jurgens Decl."), Ex. B to Notice of
27 Removal, filed Dec. 19, 2007).  Defendants contend that this
28 evidence demonstrates that the amount in controversy exceeds

3

$5,000,000, notwithstanding attorneys' fees, which are pled and properly considered in ascertaining the amount in controversy.

**ANALYSIS**

**A.  Diversity of Citizenship**

Plaintiff contends that the court should remand this matter to state court because defendants have not demonstrated that there is diversity of citizenship.  Specifically, plaintiff contends that defendant fails to allege specific facts to prove that it is not a "citizen" of California.

Where a party seeks to invoke federal jurisdiction on the basis of diversity of citizenship, the law places the burden of persuasion on the party seeking to invoke the court's jurisdiction.  <u>Indus. Tectonics, Inc. v. Aero Alloy</u>, 912 F.2d 1090, 1092 (9th Cir. 1990).  For purposes of diversity jurisdiction, a corporation is a citizen in the state of its incorporation, as well as in the state of its principal place of business.  <u>Breitman v. May Co. California</u>, 37 F.3d 562, 564 (9th Cir. 1994).

As an initial matter, plaintiff alleges in his complaint that defendant is a Delaware corporation with its principal place of business in New Jersey.  (Compl. ¶ 11).  A statement in a complaint is a judicial admission.  <u>Am. Title Ins. Co. v. Lacelaw Corp.</u>, 861 F.2d 224, 226 (9th Cir. 1988).  "Judicial admissions are formal admissions in the pleadings which have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact."  <u>Id.</u>  Plaintiff is bound by the allegations in his complaint that assert defendant's citizenship,

for purposes of diversity jurisdiction, is in Delaware and New Jersey.

However, defendant has also proffered evidence that demonstrates it is not a citizen of California for purposes of diversity jurisdiction.[2] In the Ninth Circuit, courts must first apply the "place of operations test" in determining the principal place of business of a corporation. "The 'place of operations test' locates a corporation's principal place of business in the state which 'contains a substantial predominance of corporate operations.'" Tosco Corp. v. Communities for a Better Env't, 236 F.3d 495, 500 (9th Cir. 2001). "Substantial predominance" requires that the amount of a corporation's business activity in one state be significantly larger than in any other state. Id. Factors that may be considered in this inquiry include where sales take place, production activities, location of employees, tangible property, and sources of income. Id. If the activities of a corporation do not substantially predominate in any one state, courts must apply the "nerve center test," which "locates a corporation's principal place of business in the state where the majority of its executive and administrative functions are performed." Id.

Defendant presents evidence that it does not conduct a substantial predominance of its business activities in California. Defendant operates 445 stores worldwide with 273 stores in the United States. (Decl. of Laurie Winthrop

---

[2] Neither party disputes that defendant is a Delaware corporation. (See Decl. of Laurie Winthrop ("Winthrop Decl."), filed Feb. 8, 2008, ¶ 4).

5

1  ("Winthrop Decl."), filed Feb. 8, 2008, ¶ 5).  Of the 273 stores
2  in the United States, 37 are located in California, 35 in New
3  York, 23 in Florida, 17 in Texas, 8 in Georgia and Pennsylvania,
4  6 in North Carolina and New Jersey, and 5 in Illinois and
5  Connecticut.  (Id.)  Defendant also has less employees in
6  California than in other locations; 3,661 of its employees are
7  located in New York as compared to 1,081 employees located in
8  California.  (Id. ¶ 6).  Further, defendant leases less space in
9  California than in New York; it leases 1,044,690 square feet in
10 New York compared to 258,174 square feet of property leased in
11 California.  (Id. ¶ 7).  Finally, defendant earned less income
12 from retail store operations in California (12.8%) than it did in
13 New York (18.2%) and Florida (13.4%).  (Id. ¶ 8).  Based upon
14 this evidence, defendant has demonstrated that its business
15 activities in California are not significantly larger than in any
16 other state.  See Ho v. Ikon Office Solutions, 143 F. Supp. 2d
17 1163, 1166-67 (N.D. Cal. 2001) (finding no substantial
18 predominance in California where California business activities
19 generated 7.9% of revenue, Texas and Florida generated 5.4% and
20 5.3% respectively, and remaining revenue was widely distributed
21 among many states); see also Albino v. Standard Ins. Co., 349 F.
22 Supp. 2d 1334, 1337-38 (S.D. Cal. 2004) (finding no substantial
23 predominance in California even though the majority of
24 defendant's income and sale arose from the state because the vast
25 majority of employees and real property was located in Oregon and
26 because, as the most populated state in the union, California
27 will naturally have more gross sales and more customers);
28 Arellano v. Home Depot U.S.A., Inc., 245 F. Supp. 2d 1102, 1106-

07 (finding no substantial predominance in California where there was only 5.8% differential in work force, a relatively even distribution of real property, and the executive and administrative functions took place elsewhere). As such, defendant's principal place of business is not California based upon the "place of operations test."

Moreover, California is not defendant's principal place of business under the "nerve center test." Defendant's executive and administrative functions take place at its headquarters in New York. (Winthrop Decl. ¶ 4). All corporate officers work out of this office and defendant's corporate policies and procedures are made there. (Id.) Corporate functions such as legal, finance, accounting, marketing, and human resources are based primarily in New York. (Id.) Thus, California is not the state where the majority of defendant's executive and administrative functions are performed.

Because defendant has proffered evidence that California is not its principal place of business under either the "place of operations test" or the "nerve center test," and because defendant is a Delaware corporation, Polo has demonstrated by a preponderance of the evidence that it is not a citizen of California for purposes of diversity jurisdiction.

**B.   Amount in Controversy**

Plaintiff also contends that the court should remand this matter to state court because defendants have not demonstrated that the amount in controversy exceeds $5,000,000. Specifically, plaintiff contends that although he has alleged that there is a maximum statutory penalty of $1000 under § 1747.08, the section

7

does not set forth a specific penalty and a plaintiff may be awarded a penalty below the maximum per violation.

Where a complaint does not allege a specific amount in damages, the removing defendant bears the burden of proving by a preponderance of the evidence that the amount in controversy exceeds the statutory minimum (in this case, $5,000,000 per the CAFA). Singer v. State Farm Mut. Auto Ins. Co., 116 F.3d 373, 376 (9th Cir. 1996).[3] The preponderance of the evidence standard means the "defendant must provide evidence establishing that it is '*more likely than not*' that the amount in controversy exceeds that amount." Sanchez v. Monumental Life Ins. Co., 102 F.3d 398, 404 (9th Cir. 1996) (emphasis added) (citation omitted). Said burden is not "daunting," as courts recognize that under this standard, a removing defendant is *not* obligated to "research, state, and prove the plaintiff's claims for damages." McCraw v. Lyons, 863 F. Supp. 430, 434 (W.D. Ky. 1994).

Nevertheless, a court "cannot base [its] jurisdiction on a [d]efendant's speculation and conjecture." Lowdermilk v. United States Bank Nat'l Ass'n, 479 F.3d 994, 1002 (9th Cir. 2007). Rather, a defendant must set forth the underlying facts supporting its assertion that the amount in controversy exceeds the statutory minimum. Gaus v. Miles, Inc., 980 F.2d 564, 567 (9th Cir. 1992). In addition to the contents of the removal petition, the court considers "summary-judgment-type evidence

---

[3] The CAFA did not shift the burden of proof normally applied to removal of a state action to federal court; under the CAFA, the removing defendant, not the class action plaintiff, continues to bear the burden of proof. Abrego Abrego v. The Dow Chemical Co., 443 F.3d 676, 678 (9th Cir. 2006).

1 relevant to the amount in controversy at the time of removal,"
2 such as affidavits or declarations. Valdez v. Allstate Ins. Co.,
3 372 F.3d 1115, 1117 (9th Cir. 2004) (internal quotations
4 omitted); Singer, 116 F.3d at 374 ("defense counsel submitted
5 declarations to show that the amount in controversy exceeded
6 $50,000"). A court may also consider supplemental evidence later
7 proffered by the removing defendant, which was not originally
8 included in the removal notice. Cohn v. Petsmart, Inc., 281 F.3d
9 837, 840 n. 1 (9th Cir. 2002).

10    In measuring the amount in controversy, a court must assume
11 that the allegations of the complaint are true and that a jury
12 will return a verdict for the plaintiff on all claims made in the
13 complaint. Kenneth Rothschild Trust v. Morgan Stanley Dean
14 Witter, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002). The ultimate
15 inquiry is what amount is put "in controversy" by the plaintiff's
16 complaint, not what a defendant will *actually* owe. Rippee v.
17 Boston Market Corp., 408 F. Supp. 2d 982, 986 (S.D. Cal. 2005);
18 see also Scherer v. Equitable Life Assurance Society of the
19 United States, 347 F.3d 394, 399 (2d Cir. 2003) (recognizing that
20 the ultimate or provable amount of damages is not what is
21 considered when determining the amount in controversy; rather, it
22 is the amount put in controversy by the plaintiff's complaint).

23    Plaintiff's argument that defendant has not established the
24 requisite jurisdictional amount for purposes of the CAFA because
25 the class plaintiffs could be awarded less than the maximum
26 statutory penalty per violation overlooks the critical
27 distinction between the likely recovery per plaintiff and the
28 actual issue before the court, the amount *in controversy* in this

9

litigation.  See Brill v. Countrywide Home Loans, Inc., 427 F.3d 446, 448 (7th Cir. 2005) ("The question is not what damages the plaintiff will recover, but what amount is 'in controversy' between the parties.").  Where a statutory maximum is specified, courts may consider the maximum statutory penalty available in determining whether the jurisdictional amount in controversy requirement is met.  Chabner v. United of Omaha Life Ins. Co., 225 F.3d 1042, 1046 n.3 (9th Cir. 2000) (citing Galt G/S v. JSS Scandinavia, 142 F.3d 1150, 1156 (9th Cir. 1998); Davenport v. Mut. Benefit Health and Accident Ass'n, 325 F.2d 785, 787 (9th Cir. 1963)).  Moreover, district courts in the Southern District of California and the Central District of California have looked to the statutory maximum of $1000 set forth in § 1747.08 in determining whether the jurisdictional requirements of the CAFA have been met.  Saulic v. Symantec Corp., No. 07-CV-610 (C.D. Cal. Dec. 26, 2007) (holding that where plaintiff had pled that damages could be up to the statutory maximum under § 1747.08, defendants must simply show that there are at least 5,001 putative class claims in order to meet the jurisdiction requirements of the CAFA); Romeo v. The Home Depot, No. 06-CV-1505, 2006 U.S. Dist. LEXIS 79881 (S.D. Cal. Oct. 30, 2006) (same).

   Plaintiff's complaint alleges that Korn and every other class member "is entitled to civil penalties in amounts up to one thousand dollars ($1,000) per violation."  As such, plaintiff has explicitly pled the statutory maximum set forth in § 1747.08. Plaintiff does not stipulate that he will demand less than the

maximum civil penalty.[4]  Therefore, in order to demonstrate that the amount *in controversy* meets the CAFA's jurisdictional requirement, defendant need only demonstrate that there are at least 5,001 putative class claims.  Defendant has done so. Defendant has submitted the declaration of Jurgens, Director of Sales Audit for defendant, which provides that defendant processed more than 5,000 credit card transactions over the last year in the state of California.  (Jurgens Decl. ¶ 3).  Thus, defendant has adduced enough evidence to show that the number of class claimants is sufficient to satisfy the CAFA's jurisdictional requirements.

Because plaintiff alleges in his complaint that defendant is liable for up to $1000 per violation of § 1747.08 in the processing of credit card purchases and returns, and because defendant has proffered evidence that it has processed more than 5,000 credit card transactions, Polo has demonstrated by a preponderance of the evidence that the amount in controversy exceeds $5,000,000.

**C.   Exceptions to the CAFA**

Finally, plaintiff contends that the court should remand this matter to state court because defendants have not demonstrated that the "home state" and "local controversy" exceptions to the CAFA do not apply to this action.

---

[4]   Plaintiff cannot avoid satisfaction of the amount in controversy by arguing that the class plaintiffs *may* be awarded less than the statutory maximum.  The critical inquiry is the amount placed in controversy by the allegations in plaintiff's complaint.

11

1  Although the removing party bears the burden of establishing
2 federal jurisdiction under the CAFA, the party seeking remand
3 bears the burden of proving the applicability of any express
4 statutory exception.  Serrano v. 180 Connect, Inc., 478 F.3d
5 1018, 1023-24 (9thCir. 2007).  The Ninth Circuit has recently
6 noted that it is in agreement with all other Circuits to address
7 the issue, in holding that the party seeking remand must
8 demonstrate the applicability of the "home state" and "local
9 controversy" exception to the CAFA.  Id. (citing Evans v. Walt.
10 Indus., Inc., 449 F.3d 1159, 1164-65 (11th Cir. 2006); Frazier v.
11 Pioneer Americas LLC, 455 F.3d 542, 546 (5th Cir. 2006); Hart v.
12 FedEx Ground Package Sys. Inc., 457 F.3d 675, 680-81 (7th Cir.
13 2006)).  Therefore, it is plaintiff's burden, not defendant's, to
14 demonstrate that an exception applies to the CAFA.
15  Moreover, the "home state" and "local controversy"
16 exceptions to the CAFA apply only if "the primary defendants are
17 citizens of the State in which the action was originally filed,"
18 28 U.S.C. § 1332(d)(3), or if at least one defendant "is a
19 citizen of the State in which the action was originally filed,"
20 28 U.S.C. § 1332(d)(4).  Defendant Polo is the only named
21 defendant in this action.  As set forth above, defendant has
22 demonstrated that it is not a citizen of California for purposes
23 of diversity jurisdiction.  Therefore, neither of the statutory
24 exceptions asserted by plaintiff apply.

### CONCLUSION

26  For the foregoing reasons, plaintiff's motion to remand is
27 DENIED.
28 /////

IT IS SO ORDERED.

DATED: February 27, 2008

_____
FRANK C. DAMRELL, JR.
UNITED STATES DISTRICT JUDGE